UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:19-cv-00003-FDW

| CRYSTAL DAWN MORGAN, | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) ORDER |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 11) and Defendant's Motion for Summary Judgment (Doc. No. 14). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for supplemental security income under 42 U.S.C. § 405(g).[1] For the reasons which follow, Plaintiff's motion (Doc. No. 11) is DENIED, Defendant's motion (Doc. No. 14) is GRANTED, and the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

Plaintiff filed applications for Title XVI and Title II disability benefits on September 24, 2014, alleging disability since January 1, 2009. (Tr. 14). Plaintiff's claims were denied initially on January 8, 2015, and upon reconsideration on December 8, 2015. (Tr. 14). Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on February 3, 2016. (Tr. 14). Plaintiff's hearing was held on October 30, 2017, in Asheville, North Carolina. (Tr. 14).

---

[1] "The court shall have power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

1

At the hearing, Plaintiff, through her representative, amended her alleged onset of disability date to September 24, 2014, and withdrew her requests for insurance benefits under Title II. (Tr. 14). Plaintiff's claim was denied by the ALJ in a written decision dated January 5, 2018. (Tr. 28).

In reaching this decision, the ALJ followed the five-step process for evaluating disability claims under the Social Security Act ("the Act"). (Tr. 15). In the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 24, 2014. (Tr. 17). In the second step, the ALJ determined Plaintiff had the following severe impairments: a back disorder, depression, anxiety, a personality disorder, and post-traumatic stress disorder ("PTSD"). (Tr. 17). In the third step, the ALJ found Plaintiff does not have an impairment or combination of impairments which meet or medically exceed the severity of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). After step three but prior to step four, the ALJ was required to determine Plaintiff's Residual Functional Capacity ("RFC"). The ALJ determined Plaintiff's RFC is for light work involving frequent posturals, but limited to simple, routine, repetitive work and only occasional public contact. (Tr. 18).

After determining Plaintiff's RFC, the ALJ found Plaintiff is unable to perform any of her past relevant work as a kitchen helper, retail salesperson, or animal caretaker. (Tr. 25). At the final step, the ALJ evaluates Plaintiff's age, education, work experience, RFC, and the testimony of a Vocational Expert ("VE") to determine if Plaintiff can make a "successful adjustment to other work." (Tr. 26). The ALJ found Plaintiff is capable of work as a routing clerk, an office helper, or a box sealer/inspector, all of which are found in significant numbers in the local and national economy. (Tr. 27). As such, the ALJ found Plaintiff not disabled under the Act. (Tr. 27). Plaintiff filed her complaint against Defendant on January 3, 2019. (Doc. No. 1, p. 4).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. Id.; Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not reweigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and quotations omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

> The Fourth Circuit has held:
>
> If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original).

In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on

> a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635] (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862.

If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

5

## III. ANALYSIS

Plaintiff raises only a single issue in this case, alleging the ALJ erred by not accounting for Plaintiff's mental health implications and the limitations arising from those implications when presenting hypothetical cases to the VE, in violation of Mascio and its subsequent caselaw.

When evaluating a claimant's RFC, an ALJ must consider all "medically determinable impairments, including those non-severe impairments, after considering all of the relevant evidence." Volrath v. Colvin, No. 1:14-cv-00191-MR, 2015 WL 5227818 at *3 (W.D.N.C. Sept. 8, 2015) (citing SSR 96-8p, 1996 WL 374184, at *1 (Jul. 2, 1996); 20 C.F.R. § 404.11545(a)). The ALJ must determine a claimant's limitations, and then assess the work-related abilities of the claimant on a "function by function basis." SSR 96-8p, 1996 WL 374184 at *1. The ALJ is required to include a narrative showing how the evidence supports the RFC assessment. Id. at *7.

In Mascio, the Fourth Circuit remanded the claimant's social security application after the ALJ failed to conduct a proper function-by-function analysis of the claimant's RFC and failing to include the claimant's mental limitations when presenting hypotheticals to the VE. 780 F.3d at 633–34. The Mascio court joined with the Third, Seventh, Eighth, and Eleventh Circuits in holding "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple routine tasks or unskilled work.'" Id. at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The court added "[p]erhaps the ALJ can explain why [the claimant]'s moderate limitations in concentration, persistence, or pace . . . does not translate into a limitation in [the claimant]'s residual function capacity. . . . But because the ALJ here gave no explanation, a remand is in order." Id.

Mascio was followed quickly by another relevant case, Reinhardt v. Colvin, which applied

the reasoning of Mascio to a case where the claimant had only mild mental limitations, rather than the moderate limitations found in Mascio. No. 3:14-cv-00488-MOC, 2015 WL 1756480 at *3 (W.D.N.C. April 17, 2015) (unreported). The Reinhardt court did differentiate the two criteria however, agreeing with the Commissioner that "the fact that the ALJ found mild limitations . . . does not necessarily translate to a work-related functional limitation," but finding Mascio still "imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when [claimant]'s RFC for work is considered." Id.

Like Reinhardt, Hardy v. Berryhill also reviews an ALJ's decision to not translate mild mental health impairments into functional limitations, but unlike Reinhardt, the Hardy court upheld the ALJ's decision. No. 3:16-CV-00746-FDW, 2018 WL 1385412 at *6 (W.D.N.C., March 19, 2018) (unreported). The Hardy court distinguished the case from both Mascio, which dealt with moderate mental health impairments rather than mild, Id. at *5, and Reinhardt, where the ALJ had failed to discuss his reasons for not finding functional limitations. Id. at *6.

Here, although the ALJ found Plaintiff to have both moderate mental limitations (in understanding, remembering, or applying information; as well as in interacting with others) and mild mental limitations (in concentrating, persisting, or maintaining pace; and in adapting or managing oneself), (Tr. 17-18), this case is only concerned with the mild limitations. This is because the moderate limitations found by the ALJ have already been properly integrated into Plaintiff's RFC through the need for Plaintiff to have "simple, routine, repetitive work" (accounting for the limitation in understanding, remembering, and applying information) and "only occasional public contact" (accounting for the limitations in interacting with others).

7

This case clearly falls into the same category as Hardy. Plaintiff is only alleging an error in finding her mild mental incapacities did not translate into an RFC requirement. As shown by both Reinhardt and Hardy however, a mild incapacity is not required to become an RFC requirement. It is only required that the ALJ discuss the incapacity and determine whether it is severe enough to affect the functioning of the claimant. Here the ALJ did exactly that. The ALJ's discussion of Plaintiff's RFC extends over 7 pages of the Administrative Transcript. (Tr. 18-25). The ALJ begins by identifying all of Plaintiff's alleged disabling impairments: pain, degenerative disc disease, spondylosis (arthritis of the neck), obesity, radiculopathy (pinched nerve), PTSD, panic disorder, personality disorder, depression, and adjustment disorder with anxiety. (Tr. 18-19). The ALJ goes on to discuss all these issues by name save for Plaintiff's spondylosis and radiculopathy, which were covered generally when discussing Plaintiff's back problems. (Tr. 19-25).

Plaintiff has multiple medical and non-medical opinions detailing her mental incapacities, all of which are discussed by the ALJ. Where the evidence supports the conclusion that Plaintiff's incapacities reduce her ability to function in a job, the ALJ found Plaintiff to have limitations. Thus, Plaintiff is restricted to light work due to her obesity, as well as her back and neck issues; and to simple, routine, repetitive work and occasional public contact due to her various mental incapacities, as the evidence shows Plaintiff is truly limited in these areas. Plaintiff's doctors all agree on her degenerative disc disease and the sitting and standing issues it causes, (Tr. 19-20), on her problems with instructions or change, (Tr. 22-23), and on her anti-social behavior, (Tr. 23-24); and little to no evidence exists to indicate anything to the contrary.

Unlike the evidence of Plaintiff's back problems and anti-social behavior, there are

significant amounts of contradicting evidence when assessing whether Plaintiff has concentration or management issues. Medical opinions and evidence on Plaintiff's difficulties with concentration differ. (Tr. 19 (Plaintiff reports not having attention problem)); (Tr. 21 (Dr. Marcus believes claimant has mild to moderate attention problems; N.C. DSS finds Plaintiff has difficultly staying focused at an interview)); (Tr. 22 (Plaintiff able to engage in group therapy through entire meeting; Plaintiff "highly attentive" during entire Positive Parenting Class)); (Tr. 23 (Dr. Muntz finds Plaintiff has moderate difficulties in maintaining pace)). The same is true for Plaintiff's difficulty in self-management. (Tr. 21 (Plaintiff does not show difficulties managing personal finances)); (Tr. 23 (Plaintiff needs no reminders for medication, prepares meals, does household chores, drives alone, and does her own shopping)); (Tr. 24 (Plaintiff can wash clothes, sweep with breaks, do dishes, feed chickens and attend church)).

The ALJ clearly examined all the available evidence and found Plaintiff had not successfully shown she suffered a functional limitation in her ability to concentrate or self-manage. While evidence exists which can point to either outcome in this case, it is not the place of this Court to reweigh evidence in this matter. Hays, 970 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653. Because the ALJ properly examined Plaintiff's limitations with a function-by-function analysis, and provided an adequate narration explaining how he came to his conclusion, this Court finds that there was no error.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion (Doc. No 11) is DENIED, Defendant's Motion (Doc. No. 14) is GRANTED, and the Commissioner's Decision is AFFIRMED.

9

IT IS SO ORDERED.

Signed: January 21, 2020

Frank D. Whitney
Chief United States District Judge